IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HUGH CHARLES JOSE BERGER, JR, individually and on behalf of a class of all persons and entities similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>NEXFUND, LLC<br><br>Defendant. | ) ) Civil Action No.  CIV-25-460-JAR ) ) ) ) ) ) ) ) ) ) ) ) |

## CLASS ACTION COMPLAINT

### Preliminary Statement

1. "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227) [("TCPA")]. As Congress explained, the law was a response to Americans "'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9)." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019).

2. "[T]he law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal

government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')… [P]rivate suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer*, 925 F.3d 649-50.

3. Plaintiff brings this action, against Nexfund, LLC ("Defendant") under the TCPA and the Oklahoma Telephone Solicitation Act of 2022 ("OTSA"), Okla. Stat. tit. 15 §§ 775C.1–775C.6.

4. Upon information and good faith belief, Defendant routinely violates 47 C.F.R. § 64.1200(c) and, in turn, 47 U.S.C. § 227(c)(5) and Okla. Stat. tit. 15 §§ 775C.1–775C.6 by delivering, or causing to be delivered, more than one advertisement or marketing text message to residential or cellular telephone numbers registered with the National Do-Not-Call Registry ("DNC Registry") without prior express invitation or permission required by the TCPA and the OTSA.

5. A class action is the best means of obtaining redress for the Defendant's wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and OTSA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

6. Plaintiff is an individual located in this District.

7. Defendant Nexfund, LLC is a limited liability company headquartered in Irvine, Orange County, California.

## Jurisdiction & Venue

8. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

9. Venue is proper under 28 U.S.C. § 1391(b)(2) because the calls that were initiated to Plaintiff and the putative class that are the subject of the litigation were sent to this District. As such, a substantial part of the events giving rise to the claims occurred in this District.

## TCPA Background

10. The TCPA was passed in 1991 to help prevent unwanted telephone calls and solicitations, to provide power to consumers to prevent unwanted solicitations, and to rein in unrestricted telemarketing. *See* 47 U.S.C. § 227, *et seq.*

11. § 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

12. In this rulemaking proceeding, the FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific 'do not call' systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish the purposes of this section." *Id.* at (c)(1)(A), (E).

13. Pursuant to this statutory mandate, the FCC established a national "do not call" database. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

14. This regulation is presently codified at 47 CFR 64.1200(c)(1-2).

15. Accordingly, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 CFR 64.1200(c)(2).

16. Under the TCPA, as confirmed by the Supreme Court, text messages are "calls" for the purposes of the TCPA. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 153 (2016).

**OTSA Background**

17. In 2022, Oklahoma enacted the OTSA (HEA 3168, codified at Okla. Stat. tit. 15 §§ 775C.1–775C.6) in response to widespread abuses of telemarketing and text-based solicitation.

18. The statute mirrors and supplements the TCPA, prohibiting unsolicited text messages and calls to Oklahoma consumers without prior express written consent.

19. The OTSA's legislative findings emphasized Oklahoma's interest in safeguarding its citizens' privacy and providing remedies for invasions of domestic tranquility caused by mass text campaigns.

20. Like the TCPA, the OTSA authorizes $500 per violation and up to $1,500 for willful or knowing violations, and creates a private right of action for injunctive relief and damages.

21. The OTSA prohibits a person from making, or knowingly allowing to be made, a commercial telephonic sales call that involves an automated system for the selection or dialing of telephone numbers, or the playing of a recorded message when a connection is completed to a number called, without the prior express written consent of the called party. Okla. Stat. tit. 15, § 775C.3(A).

22. The OTSA's "prior express written consent" requirement is specific. It requires a written agreement bearing the called party's signature that clearly authorizes the delivery of commercial telephonic sales calls by telephone call, text message, or voicemail transmission using an automated system for the selection or dialing of telephone numbers, the playing of a recorded message when a connection is completed, or the transmission of a prerecorded voicemail. The written agreement must also include the telephone number authorized and specified disclosures, including that consent is not required as a condition of purchasing any property, goods, or services. Okla. Stat. tit. 15, § 775C.2.

23. The OTSA further provides a rebuttable presumption that a commercial telephonic sales call made to any area code in Oklahoma is made to an Oklahoma resident or to a person in Oklahoma at the time of the call. Okla. Stat. tit. 15, § 775C.3(D).

24. The OTSA explicitly covers text messages sent for commercial solicitation, reflecting legislative recognition that modern nuisance marketing is increasingly digital.

**Factual Allegations**

25.  Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

26.  Plaintiff's telephone number, 918-XXX-XXXX, is on the National Do Not Call Registry and has been registered there since November 23, 2024.

27.  The Plaintiff's telephone number is used for residential purposes and is not associated with a business.

28.  The Plaintiff's telephone number is assigned to a residential telephone exchange service for consumers, not a telephone exchange service for businesses.

29.  The Plaintiff uses the telephone number for personal, family, and household purposes.

30.  The Plaintiff uses the telephone as one would use a landline for residential purposes.

31.  Indeed, the Plaintiff does not have a landline.

32.  The Plaintiff's cellphone was a personal (not business) plan.

33.  The Plaintiff did not use the phone number associated with a business or advertise it for business purposes.

34.  Plaintiff nonetheless received at least eleven telemarketing text messages from Defendant from telephone number (844) 942-1180.

35.  The text messages were sent on July 23, 24, and 26, 2025 as well as August 4, 6, 7, 11, 12, 13, 18 and 19, 2025.

36.  Some of the text messages are provided below:







37. The text messages qualify as telemarketing.

38. The text messages were sent to advertise Defendant's loan service business.

39. Plaintiff's privacy has been violated by the above-described telemarketing calls.

40. Defendant sent the text messages at issue using an automated system for the selection or dialing of telephone numbers, including equipment and software that automatically selects numbers from stored lists, initiates text messages in bulk, and transmits messages without meaningful human intervention for each recipient.

41. The text messages were sent as part of a mass text campaign delivered in repeated waves over multiple dates, reflecting the use of an automated system rather than individualized, manual communications.

42. The volume, frequency, repetition, timing, and standardized content of Defendant's text messages demonstrate that Defendant used an automated system to select and dial telephone numbers and to deliver telemarketing messages.

43. Plaintiff never provided his consent or requested the telemarketing calls. Thus, the calls were all unwanted, nonconsensual encounters.

44. Plaintiff and all members of the Classes, defined below, have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, storage space, and bandwidth, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## Class Action Statement

45. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

46. Plaintiff brings this action on behalf of himself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or (b)(3).

47. Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

> **National Do Not Call Registry Class:** All persons within the United States: (1) whose residential telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one text message advertising Defendant's goods or services from Defendant or a third party acting on Defendant's behalf; (3) within a 12-month period; (4) within the four years prior to the filing of the Complaint through the date of trial.
>
> **Oklahoma OTSA Class**: All Oklahoma residents (1) who, within the last two years prior to the filing of the Complaint through the date of trial (2) received one or more telemarketing calls or text messages promoting Defendant's goods or services that were made using (3) the same or a similar dialing system that the Plaintiff was contacted on.

48. Plaintiff is a member of, and will fairly and adequately represent and protect the interests of, the Classes as he has no interests that conflict with any of the Class members.

49. Plaintiff and all members of the Classes have been harmed by the acts of Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

50. Members of the Classes as defined above, are identifiable through Defendant's dialer records, other phone records, and phone number databases.

51. Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds.

52. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

53. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

54. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the Class claims predominate over questions that may affect individual Class members.

55. There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including, but not limited to, the following:

   a. Whether Defendant made multiple telephone solicitations to Plaintiff and members of the National Do Not Call Registry Class;

   b. Whether Defendant made multiple telephone solicitations to members of the Oklahoma Telephone Solicitation Act Class;

   c. Whether Defendant made calls to Plaintiff and members of the National Do Not Call Registry Class and/or the Oklahoma Telephone Solicitation Act Class without first obtaining prior express written consent to make the calls;

   d. Whether Defendant's conduct constitutes a violation of the TCPA and/or the OTSA; and

   e. Whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

56. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and his counsel

are committed to vigorously prosecuting this action on behalf of the other members of the Class, and have the financial resources to do so.

57. Common questions of law and fact predominate over questions affecting only individual Class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The sole question concerns identification of Class members, which will be ascertainable from records maintained by Defendant and/or its agents.

58. The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

59. Excluded from the Classes are counsel, Defendant, and any entities in which Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

60. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

**First Cause of Action**
**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c) on behalf of Plaintiff and the National Do Not Call Registry Class)**

61. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

62. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to Plaintiff and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

63. Defendant's violations were negligent, willful, or knowing.

64. As a result of Defendant's, and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are entitled to an award of up to $500 and in damages for each and every call made and up to $1,500 in damages if the calls are found to be willful.

## Second Cause of Action
### Violation of the Oklahoma Telephone Solicitation Act (OTSA), Okla. Stat. tit. 15 §§ 775C.1–775C.6
**(On Behalf of Plaintiff and the OTSA Class)**

65. Plaintiff incorporates the above paragraphs.

66. Defendant initiated, or caused to be initiated, unsolicited text messages to Plaintiff and Oklahoma class members without prior express written consent.

67. Defendant made, or caused to be made, commercial telephonic sales calls, including telemarketing text messages, to Plaintiff and members of the Oklahoma Class using an automated system for the selection or dialing of telephone numbers, without prior express written consent, in violation of the OTSA.

68. The OTSA prohibits precisely this conduct.

69. Defendant's actions were willful and knowing, given widespread complaints, federal regulation, and obvious lack of consent.

70. Plaintiff and OTSA Class members are entitled to statutory damages of $500 per violation, trebled up to $1,500 for willful violations, as well as injunctive relief.

## Prayer for Relief

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. Certification of the Classes as alleged herein;

  B. Appointment of Plaintiff as representative of the Classes;

  C. Appointment of the undersigned as counsel for the Classes;

  D. Damages to Plaintiff and members of the Classes pursuant to 47 U.S.C. § 227(c)(5) and/or 15 O.S. § 775C.6;

  E. Attorneys' fees and costs, as permitted by law; and

  F. Such other or further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the complaint so triable.

Dated: December 22, 2025

        */s/ Matthew D. Alison*
        Matthew Alison, OBA 32723
        Indian and Environmental Law Group, PLLC
        233 S. Detroit, STE 200
        Tulsa, OK 74120
        Tel: (918) 347-6169
        matthew@iaelaw.com

        */s/ Anthony I. Paronich*
        Anthony I. Paronich, *Subject to Pro Hac Vice*
        Paronich Law, P.C.
        350 Lincoln Street, Suite 2400
        Hingham, MA 02043
        (508) 221-1510
        anthony@paronichlaw.com